JS 44 (Rev. 06/17)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS
ANTHONY A. LOMBARDI

**DEFENDANTS**
MACQUARIE INVESTMENT MANAGEMENT BUSINESS TRUST, MACQUARIE INVESTMENT MANAGEMENT, MACQUARIE GROUP LIMITED, and D. TYSEN NUTT, JR.

(b) County of Residence of First Listed Plaintiff   Middlesex
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant   Philadelphia
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

(c) Attorneys *(Firm Name, Address, and Telephone Number)*
Katherine C. Oeltjen, Esquire; Console Mattiacci Law LLC
1525 Locust Street, 9th Floor
Philadelphia, PA 19102          215-545-7676

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

☐ 1  U.S. Government Plaintiff
☒ 3  Federal Question *(U.S. Government Not a Party)*
☐ 2  U.S. Government Defendant
☐ 4  Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability | | | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | | | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | ☐ 368 Asbestos Personal Injury Product Liability | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 340 Marine | | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 345 Marine Product Liability | **PERSONAL PROPERTY** | | ☐ 835 Patent - Abbreviated New Drug Application | ☐ 460 Deportation |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | **LABOR** | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 371 Truth in Lending | ☐ 710 Fair Labor Standards Act | **SOCIAL SECURITY** | ☐ 480 Consumer Credit |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 380 Other Personal Property Damage | ☐ 720 Labor/Management Relations | ☐ 861 HIA (1395ff) | ☐ 490 Cable/Sat TV |
| ☐ 195 Contract Product Liability | ☐ 362 Personal Injury - Medical Malpractice | ☐ 385 Property Damage Product Liability | ☐ 740 Railway Labor Act | ☐ 862 Black Lung (923) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 196 Franchise | | | ☐ 751 Family and Medical Leave Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| | | | | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| | | | | ☐ 865 RSI (405(g)) | ☐ 893 Environmental Matters |
| | | | | | ☐ 895 Freedom of Information Act |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☒ 790 Other Labor Litigation | **FEDERAL TAX SUITS** | ☐ 896 Arbitration |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | ☐ 791 Employee Retirement Income Security Act | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | | ☐ 871 IRS—Third Party 26 USC 7609 | |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate Sentence | | | ☐ 950 Constitutionality of State Statutes |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 530 General | | | |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 535 Death Penalty | **IMMIGRATION** | | |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | **Other:** | ☐ 462 Naturalization Application | | |
| | ☐ 448 Education | ☐ 540 Mandamus & Other | ☐ 465 Other Immigration Actions | | |
| | | ☐ 550 Civil Rights | | | |
| | | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

☒ 1 Original Proceeding
☐ 2 Removed from State Court
☐ 3 Remanded from Appellate Court
☐ 4 Reinstated or Reopened
☐ 5 Transferred from Another District *(specify)*
☐ 6 Multidistrict Litigation - Transfer
☐ 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
Sarbanes-Oxley Act, as amended, 18 U.S.C. §1514A ("SOX")
Brief description of cause:
Plaintiff brings claims against former employers for wrongful termination under Sarbanes-Oxley.

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.
**DEMAND $** in excess of $150,000
CHECK YES only if demanded in complaint:
**JURY DEMAND:**  ☒ Yes  ☐ No

## VIII. RELATED CASE(S) IF ANY
*(See instructions):*
JUDGE                    DOCKET NUMBER

DATE
11/30/2017

SIGNATURE OF ATTORNEY OF RECORD
*[signature]*

**FOR OFFICE USE ONLY**

RECEIPT #          AMOUNT          APPLYING IFP          JUDGE          MAG. JUDGE

UNITED STATES DISTRICT COURT                                                APPENDIX F

FOR THE EASTERN DISTRICT OF PENNSYLVANIA — DESIGNATION FORM to be used by counsel to indicate the category of the case for the purpose of assignment to appropriate calendar.

Address of Plaintiff: **Plainsboro, NJ 08536**

Address of Defendant: **2005 Market Street, Philadelphia, PA 19103; 125 West 55th Street, New York, NY 10019**

Place of Accident, Incident or Transaction: _____
*(Use Reverse Side For Additional Space)*

Does this civil action involve a nongovernmental corporate party with any parent corporation and any publicly held corporation owning 10% or more of its stock?
(Attach two copies of the Disclosure Statement Form in accordance with Fed.R.Civ.P. 7.1(a))     Yes☐  No☒

Does this case involve multidistrict litigation possibilities?     Yes☐  No☒

*RELATED CASE, IF ANY:*

Case Number: _____ Judge: _____ Date Terminated: _____

Civil cases are deemed related when yes is answered to any of the following questions:

1. Is this case related to property included in an earlier numbered suit pending or within one year previously terminated action in this court?     Yes☐  No☒

2. Does this case involve the same issue of fact or grow out of the same transaction as a prior suit pending or within one year previously terminated action in this court?     Yes☐  No☒

3. Does this case involve the validity or infringement of a patent already in suit or any earlier numbered case pending or within one year previously terminated action in this court?     Yes☐  No☒

CIVIL: (Place ✔ in ONE CATEGORY ONLY)

A. *Federal Question Cases:*
1. ☐ Indemnity Contract, Marine Contract, and All Other Contracts
2. ☐ FELA
3. ☐ Jones Act-Personal Injury
4. ☐ Antitrust
5. ☐ Patent
6. ☐ Labor-Management Relations
7. ☒ Civil Rights
8. ☐ Habeas Corpus
9. ☐ Securities Act(s) Cases
10. ☐ Social Security Review Cases
11. ☐ All other Federal Question Cases
    (Please specify)

B. *Diversity Jurisdiction Cases:*
1. ☐ Insurance Contract and Other Contracts
2. ☐ Airplane Personal Injury
3. ☐ Assault, Defamation
4. ☐ Marine Personal Injury
5. ☐ Motor Vehicle Personal Injury
6. ☐ Other Personal Injury (Please specify)
7. ☐ Products Liability
8. ☐ Products Liability — Asbestos
9. ☐ All other Diversity Cases
    (Please specify)

ARBITRATION CERTIFICATION
*(Check appropriate Category)*

I, **Katherine C. Oeltjen, Esquire**, counsel of record do hereby certify:

☒ Pursuant to Local Civil Rule 53.2, Section 3(c)(2), that to the best of my knowledge and belief, the damages recoverable in this civil action case exceed the sum of $150,000.00 exclusive of interest and costs;

☒ Relief other than monetary damages is sought.

DATE: **November 30, 2017**   _____   318037
                               Attorney-at-Law                Attorney I.D.#

NOTE: A trial de novo will be a trial by jury only if there has been compliance with F.R.C.P. 38.

I certify that, to my knowledge, the within case is not related to any case now pending or within one year previously terminated action in this court except as noted above.

DATE: **November 30, 2017**   _____   318037
                               Katherine C. Oeltjen

APPENDIX I

# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

## CASE MANAGEMENT TRACK DESIGNATION FORM

| | |
|---|---|
| ANTHONY A. LOMBARDI | CIVIL ACTION |
| Plaintiff, | |
| v. | |
| MACQUARIE INVESTMENT MANAGEMENT BUSINESS TRUST, MACQUARIE INVESTMENT MANAGEMENT, MACQUARIE GROUP LIMITED, & D. TYSEN NUTT, JR. | NO. |
| DEFENDANTS. | |

In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for plaintiff shall complete a case Management Track Designation Form in all civil cases at the time of filing the complaint and serve a copy on all defendants. (See § 1:03 of the plan set forth on the reverse side of this form.) In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a case management track designation form specifying the track to which that defendant believes the case should be assigned.

SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS:

(a) Habeas Corpus – Cases brought under 28 U.S.C. §2241 through §2255.   ( )

(b) Social Security – Cases requesting review of a decision of the Secretary of Health and Human Services denying plaintiff Social Security Benefits   ( )

(c) Arbitration – Cases required to be designated for arbitration under Local Civil Rule 53.2.   ( )

(d) Asbestos – Cases involving claims for personal injury or property damage from exposure to asbestos.   ( )

(e) Special Management – Cases that do not fall into tracks (a) through (d) that are commonly referred to as complex and that need special or intense management by the court. (See reverse side of this form for a detailed explanation of special management cases.)   ( )

(f) Standard Management – Cases that do not fall into any one of the other tracks.   (X)

| | | |
|---|---|---|
| November 30, 2017 | *signature* | Katherine C. Oeltjen, Attorney for |
| Date | Attorney-at-law | Attorney for Plaintiff   Anthony A. Lombardi |
| (215) 545-7676 | 215-565-2852 | oeltjen@consolelaw.com |
| Telephone | FAX Number | E-Mail Address |

(Civ. 660) 10/02

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

CONSENT TO RECEIVE NOTICE OF ORDERS AND JUDGMENTS IN CIVIL AND
CRIMINAL CASES BY MEANS OF FACSIMILE TRANSMISSION
AND WAIVER OF PROVISIONS OF FED.R.CIV.P. 77(d) OR FED.R. CRIM.P. 49(c)
PROVIDING FOR SAID NOTICE BY MEANS OF MAIL

TO THE CLERK OF COURT:

I hereby waive the provisions of Fed.R.Civ.P. 77(d) or Fed.R.Crim.P. 49(c) providing for notice of the entry of Orders or Judgments by mail in the manner provided by Fed.R.Civ.P. 5 or Fed.R.Crim.P. 49(c), and consent that notice may be given to me, in all pending and future civil or criminal cases in which I enter my appearance, by the Clerk of Court by facsimile in lieu of notice by means of mail. I understand that this form, when executed, will serve as Notice to and Authorization for the Clerk of Court to keep this information on file for all pending and future civil or criminal cases in which I enter my appearance.

I hereby confirm, by execution of this form, that I understand that it is my responsibility to notify the Clerk of Court, in writing, of my current address and facsimile number.

**Katherine C. Oeltjen, Esquire**
Name (Printed)
Console Mattiacci Law LLC
1525 Locust Street, 9th Floor
Philadelphia, PA 19012
Address (Printed)

318037
Bar Id Number

(215) 545-7676
Telephone Number

_____
Address (Printed)

(215) 565-2852
FAX Number

_____
Signature

November 30, 2017
Date

IN THE UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ANTHONY A. LOMBARDI<br>Plainsboro, NJ 08536<br><br>             Plaintiff,<br><br>    v.<br><br>MACQUARIE INVESTMENT<br>MANAGEMENT BUSINESS TRUST<br>2005 Market Street<br>Philadelphia, PA 19103<br><br>AND<br><br>MACQUARIE INVESTMENT<br>MANAGEMENT<br>2005 Market Street<br>Philadelphia, PA 19103<br><br>MACQUARIE GROUP LIMITED<br>125 West 55th Street<br>New York, NY 10019<br><br>AND<br><br>D. TYSEN NUTT, JR<br>2005 Market Street<br>Philadelphia, PA 19103<br><br>             Defendants. | CIVIL ACTION NO.<br><br>JURY TRIAL DEMANDED |

## COMPLAINT

### I.    INTRODUCTION

Plaintiff, Anthony A. Lombardi, by and through his undersigned counsel, brings this action under the Sarbanes-Oxley Act, as amended, 18 U.S.C. §1514A ("SOX") against his former employers and former supervisor, Macquarie Investment Management

Business Trust, Macquarie Investment Management, and Macquarie Group Limited ("Corporate Defendants") and D. Tysen Nutt, Jr, ("Defendant Nutt"), collectively ("Defendants"). Defendants denied Plaintiff his bonus and terminated his employment in retaliation for engaging in protected activity by providing Defendants with information relating to Defendants' violation of its reporting obligations under SOX and Defendants' misrepresentations to current and prospective investors regarding implementation of its investment process, investment philosophy, and factors underpinning buy and sell decisions of securities held by the various funds that Plaintiff co-managed. Plaintiff, an accomplished investment professional with a multi-year track record of success and numerous industry awards and recognitions, was part of a small team of fund managers responsible for investing more than one billion dollars ($1,000,000,000) on behalf of Corporate Defendants' shareholders and clients through the Delaware Value Fund ("Fund") and related products. When Defendants began to deviate from their stated and published investment process, including without limitation, by failing to adequately research certain equities before purchasing them or rebalancing the Fund's position in certain equities, purchasing or selling (or failing to sell) equities that did not fit the stated quantitative metrics promised to shareholders, and remaining conscientiously over weighted in certain sectors despite knowledge of unacceptable risk associated with same, Plaintiff complained to Defendants amid the risk to shareholders. In retaliation, Defendants denied Plaintiff his year-end bonus and terminated his employment.

## II.    PARTIES

1. Plaintiff Anthony A. Lombardi is an individual and citizen of the State of New Jersey. He resides in Plainsboro, New Jersey.

2. Defendant Macquarie Investment Management Business Trust ("Defendant MIMBT") is a business trust organized under the laws of Delaware and consisting of the following: Delaware Management Company; Macquarie Investment Management Advisors; Delaware Capital Management; Delaware Capital Management; Macquarie Alternative Strategies and Delaware Investment Fund Advisors.

3. At all times material hereto, Defendant MIMBT had a principle place of business at 2005 Market Street, Philadelphia, PA 19103.

4. Defendant MIMBT is a registered investment advisor under the Investment Advisors Act of 1940, 15 U.S.C. §80b-1, *et seq.* and is subject to all obligations contained therein.

5. Defendant MIMBT was formerly known as Delaware Management Business Trust and used the marketing name "Delaware Investments."

6. Defendant Macquarie Investment Management ("Defendant MIM"), is the marketing name for the companies comprising the asset management division of Macquarie Group Limited and its subsidiaries and affiliates worldwide. Defendant MIMBT is one of the companies within Defendant MIM.

7. At all times material hereto, Defendant MIM had a principle place of business at 2005 Market Street, Philadelphia, PA 19103.

8. Defendant MIM was formerly known by the marketing name Delaware Investments.

9. Defendants MIM and MIMBT are affiliated entities. DIMBT relies upon employees of Defendant MIM to actively manage its family of mutual funds. Upon

3

information and belief, a contract exists between the two entities for investment advisory services and the controls the aforementioned relationship.

10. Macquarie Group Limited ("Defendant Group") is organized under the laws of Australia and maintains a principle place of business in the United States at 125 W 55th Street, New York, NY 10019.

11. Defendant Group is a public company with registered securities trading under the following symbols: MGQ (Australia Exchange) and MQBKY (ADR in the United States).

12. At all times material hereto, Defendant Group operated through the above identified business units and within the Commonwealth of Pennsylvania by operation of its 2005 Market Street, Philadelphia, PA offices.

13. Defendant Group wholly owns Defendants MIM and MIMBT.

14. Defendant Nutt is an individual citizen of the State of New Jersey.

15. At all times material hereto, Defendant Nutt was Senior Vice President, Senior Portfolio Manager and Team Leader of the Fund.

16. At all times material hereto, Defendant Nutt had supervisory authority over Plaintiff.

17. At all times material hereto, Defendant Nutt had the authority to investigate, discover or terminate misconduct.

18. At all times material hereto, Defendant Nutt was employed by the Corporate Defendants and worked out of their 2005 Market Street, Philadelphia, PA offices.

19. The Defendants are covered entities/individuals as defined by SOX.

20. At all times material hereto, Plaintiff was an employee of Defendants as defined by SOX.

21. On or about August, 5, 2016, Plaintiff filed a Complaint with the Occupational Health and Safety Administration ("OSHA") as required by the statue. It has been more than 180 days and OSHA has not reached a determination of his complaint.

22. Plaintiff has complied all administrative prerequisites.

### III. JURISDICTION AND VENUE

23. The cause of action which forms the basis of this matter arise under the Sarbanes-Oxley Act ("SOX"), 18 U.S.C. §1514A, as amended.

24. The District Court has jurisdiction over this matter pursuant to 18 U.S.C. §1514A(b).

25. Venue is proper under 28 U.S.C. §1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred within this District.

### IV. FACTUAL ALLEGATIONS

26. Plaintiff was hired by the Corporate Defendants' predecessor in interest, Delaware Investments and its related entities, on or about March 8, 2004.

27. Plaintiff, along with Defendant Nutt, and others were hired from Merrill Lynch as part of a team "lift out" as Corporate Defendants' predecessor in interest intended to boost the performance and stature of its investment products related to funds invested with a "value" investment style and focused on companies with large market capitalizations.

28. Ultimately, Plaintiff, Defendant Nutt and other team members managed the Delaware Value Fund ("Fund"), and all related Fund products.

29. Though the individual team members varied throughout his time with Corporate Defendants, the Fund was at all times managed by a team of four to six investment professionals ("Fund Managers").

30. During Plaintiff's tenure as a Fund Manager, the Fund grew amid both strong performance of the fund and as its success attracted additional investments, to have more than ten (10) billion dollars in assets under management. In total, the assets under management in the large cap investment style grew to exceed twenty (20) billion dollars during Plaintiff's tenure.

31. In addition to the day-to-day active management of assets under management within the Fund, including making buy and sell determinations of specific equities, Plaintiff was also tasked with performing detailed research and analysis of individual equities as well as various sectors of the economy that were under consideration by the Fund Managers for purchase or sale.

32. Plaintiff was the only investment professional of the Fund Managers with any formal research publication experience. Defendants relied upon him to develop the team's research rubric.

33. In turn, once Plaintiff developed the Fund's research rubric and process, Defendant Nutt and others presented same to investors and potential investors, promising that the process would be followed prior to the Fund's purchase of any instrument as well as in connection with the sale of any instrument.

34. Information provided to investors and potential investors took the form of both written documents, filings with the SEC and oral statements regarding how assets under management were invested.

35. As part of Corporate Defendants' obligations under the Investment Company Act of 1940 (the "Act"), as amended, and related regulations, at the conclusion of each reporting period, written commentaries and other related documents were circulated to Fund Managers by Corporate Defendants for approval and certification prior to filing the information with the Securities and Exchange Commission ("SEC").

36. The commentaries and related documents were also transmitted to shareholders in the Fund and prospective investors in the Fund.

37. The stated purpose of the commentaries and related documents that were transmitted to shareholders in the Fund and prospective investors in the Fund was to allow shareholders and potential shareholders to fully understand how and in what securities the Fund was investing its asset under management and to then make decisions regarding its investment or potential investment in the Fund.

38. In addition to certifications related to the Fund, Corporate Defendants asked Fund Managers, including Plaintiff, to certify information related to other products within Corporate Defendants' family of funds where the Fund Managers managed a "sleeve" or portion of the investment product.

39. Security holdings in these "sleeves" required the same amount of due diligence and accurate reporting that holdings in the Fund required.

40. The requests for approvals or "sign offs" of certifications to be filed with the SEC would come to Plaintiff by way of a series of emails with a link to the document that required his certification.

41. Each Fund Manager received the same emails containing links and was expected by Defendants to certify the documents found at each link.

7

42. The documents included, without limitation, documents purporting to be "Management's Discussion of Fund Performance" as required to be filed with the SEC under the Act.

43. Plaintiff discovered that inaccurate or incomplete information was contained in documents, including without limitation "Management's Discussion of Fund Performance."

44. At the same time, the Fund was deviating from its promised and published investment process without notifying shareholders and perspective shareholders of same.

45. Plaintiff provided information to Defendant Nutt that the Fund was not following its stated investment process.

46. By late 2014, Plaintiff routinely refused to certify or "sign off" on certifications provided to him by Defendants as they did not accurately describe fund performance or appropriately summarize Fund holdings.

47. Plaintiff provided information to Defendant Nutt, his supervisor, regarding his belief that the inaccurate information provided to the SEC constituted a violation of securities laws and regulations.

48. Plaintiff further engaged in protected activity by also providing information to Defendant Nutt that in failing to provide accurate information to shareholders and perspective shareholders of the fund, that Corporate Defendants were further violating securities laws and regulations and risking fraud upon shareholders.

49. Defendant Nutt had authority to investigate, discover or terminate the misconduct Plaintiff identified.

50. Defendant Nutt did not investigate, discover or terminate the misconduct Plaintiff identified.

51. Instead, Defendant Nutt retaliated against Plaintiff for reporting misconduct. By way of example, and without limitation, Defendant Nutt began to cancel weekly team meetings in an effort to avoid any further complaints by Plaintiff regarding misconduct and isolate him further from decision-making. Upon information and belief, Defendant Nutt would then meet with other Fund Managers, who did not object to misconduct, to make investment decisions.

52. When Plaintiff refused to certify inaccurate commentaries, Corporate Defendants reminded him of his obligation to do so.

53. In or about February, 2015, Corporate Defendants accepted new funds into the Fund that were invested contingent upon certain conditions that were inconsistent with the Fund's SEC filings and other published materials.

54. On or about February 17, 2015, Plaintiff complained by way of email to Mike Hogan ("Hogan") Head of Equity Investments Delware Investments regarding Corporate Defendants deviation from stated investment particulars and further provided information to Corporate Defendants regarding potential violations of its fiduciary and related duties to shareholders.

55. In response to Plaintiff's engagement in protected activity by providing information regarding potential violation of its duties to shareholders, Defendants issued a verbal warning to Plaintiff, threatened his termination and required that he email a written apology regarding same in a manner acceptable to Defendants if he wished to remain employed.

56. By in or about November, 2015, Defendants stopped asking Plaintiff to approve documents provided to the SEC and shareholders and sough to isolate him from investment decisions amid his engagement in protected activity and on-going efforts to ensure that Defendants followed securities laws and regulations and properly informed shareholders and potential shareholders.

57. In an email dated November 27, 2015, Plaintiff complained to Nutt that the failure to send him commentaries for "sign off" as well as Defendants on-going practice of sending incomplete or inaccurate information to the SEC and shareholders violated SOX.

58. Defendant Nutt responded to the November 27, 2015 email by telling Plaintiff that his concerns regarding violation of securities laws were "misplaced."

59. By November 27, 2015, Plaintiff complained to Defendant Nutt that the Fund was not following its stated criteria in making buy and sell decisions, resulting in equities being purchased or sold that did not meet the quantitative criteria promised to shareholders. In addition, Plaintiff further complained that in failing to follow the quantitative methods promised to shareholders, the Fund remained over weighted in a number of sectors, notably energy.

60. Plaintiff complained to Defendants that failure to follow its stated fundamental research and quantitative investment process resulted in additional, unnecessary risk to shareholders and was not consistent with the risks identified to shareholders in publicly available documents.

61. Shortly after Plaintiff's November 27, 2015 email, Defendant Nutt began to question Plaintiff regarding routine and trivial matters including, without limitation, his expense report.

62. Plaintiff understood Defendant Nutt to be seeking excuses to criticize his performance in retaliation for his on-going engagement in protected activity.

63. From late 2015 until February 9, 2016, Defendant Nutt further retaliated against Plaintiff for the steps he had taken to provide Defendant Nutt with information regarding violations and potential violations of the securities laws and risk of fraud upon shareholders and potential shareholders. By way of example and without limitation:

   a. Defendant Nutt excluded Plaintiff from meetings, particularly those related to investment process or compliance issues. Plaintiff understood Defendant Nutt to be attempting to limit his ability to further complain.

   b. Defendant Nutt sought to isolate Plaintiff from other team members, while meeting with Fund Managers outside of Plaintiff's presence;

   c. Defendant Nutt exerted pressure upon Plaintiff to rush his research and analysis of potential investment vehicles in contrast to the Fund's stated investment process; and,

   d. Defendant Nutt attempted to prevent Plaintiff from meeting with Fund shareholders. Plaintiff understood Defendant Nutt to be fearful that he would report Defendants wrongful conduct to clients or contradict Defendant Nutt when he made false and/or misleading statements to Fund shareholders.

64. During the same time period, Plaintiff provided information to Defendants, including Defendant Nutt, that marketing materials or "pitch books" were inaccurate and did not reflect investment practices actually employed by Fund Managers.

65. Plaintiff complained to Defendant Nutt that the inaccurate pitch books would lead shareholders to purchase the Fund based on incorrect representations made by the Fund.

66. As Defendant Nutt further retaliated against Plaintiff, Plaintiff similarly complained by providing information regarding the inaccurate documents, including without limitation, commentaries provided to the SEC and the pitch books to Defendant Nutt's supervisor and other senior leaders within the Corporate Defendant's organization.

67. On or about February 9, 2016, Plaintiff was told he was being terminated effective immediately.

68. The only reason given for Plaintiff's termination was that Defendants were "going in a different direction."

69. Defendants denied Plaintiff his bonus for the 2016 fiscal year, slated to end March 31, 2016 in terminating him and in timing the termination for the purpose of same.

70. To the best of Plaintiff's knowledge, his bonus was split among the other Fund Managers, including Defendant Nutt.

71. As a direct and proximate result of the retaliatory conduct of Defendant, Plaintiff has in the past incurred, and may in the future incur, a loss of earnings and/or earning capacity, loss of benefits, pain and suffering, embarrassment, humiliation, loss of self-esteem, mental anguish, and loss of life's pleasures, the full extent of which is not known at this time.

72. Plaintiff is now suffering and will continue to suffer irreparable injury and monetary damages as a result of Defendants' retaliatory acts unless and until this Court grants the relief requested herein.

### COUNT I
### SARBANES- OXLEY 18 U.S.C. §1514A
### AGAINST ALL DEFENDANTS

73. Plaintiff incorporates herein by reference paragraphs 1 through 72 above as if set forth herein in their entirety.

74. Defendants retaliated against Plaintiff, including, without limitation, in connection with the denial of his bonus and his termination, and otherwise discriminated against Plaintiff because Plaintiff took action protected by SOX.

75. Plaintiff provided information concerning conduct which he reasonably believed constituted a violation of any rule or regulation of the Securities and Exchange Commission, or any provision of Federal Law relating to fraud against shareholders, including without limitation the Act.

76. Plaintiff provided the information alleged above to persons with supervisory authority over him and/or persons working for Corporate Defendants who had the authority to investigate, discover, or terminate misconduct.

77. Corporate Defendants are also vicariously liable for the actions of its employees and agents as described above.

78. Because of Defendants actions, Plaintiff suffered the damages and losses alleged herein, including without limitation, a loss of earnings and/or earning capacity, loss of benefits, pain and suffering, embarrassment, humiliation, loss of self-esteem,

mental anguish, and loss of life's pleasures, the full extent of which is not known at this time as well as incurring attorneys' fees and costs.

### RELIEF

WHEREFORE, Plaintiff seeks damages and legal and equitable relief in connection with Defendants' improper conduct, and specifically prays that the Court grant the following relief to the Plaintiff by:

(a) declaring the acts and practices complained of herein to be in violation of SOX;

(b) enjoining and permanently restraining the violations alleged herein;

(c) entering judgment against the Defendants and in favor of the Plaintiff in an amount to be determined;

(d) awarding Plaintiff lost wages and benefits;

(e) reinstating Plaintiff;

(f) awarding compensatory and special damages to Plaintiff for past and future pain and suffering, emotional upset, mental anguish, humiliation, and loss of life's pleasures, which Plaintiff has suffered or may suffer as a result of Defendant's improper conduct;

(g) awarding Plaintiff all such other damages as are appropriate under SOX;

(h) awarding Plaintiff the costs of suit, expert fees and other disbursements, and reasonable attorneys' fees; and,

(i) granting such other and further relief as this Court may deem just, proper, or equitable including other equitable and injunctive relief providing restitution for past violations and preventing future violations.

CONSOLE MATTIACCI LAW, LLC

Dated: November 30, 2017          BY: _____
                                  Stephen G. Console, Esquire
                                  Katherine C. Oeltjen, Esquire
                                  1525 Locust St., 9th Floor
                                  Philadelphia, PA 19102
                                  (215) 545-7676
                                  (215) 565-2852 (fax)

                                  *Attorneys for Plaintiff*
                                  *Anthony A. Lombardi*